# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF EDUCATION OF LAKE FOREST HIGH SCHOOL DISTRICT 115, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 19-cv-04475 |
| v. | ) ) | Hon. Steven C. Seeger |
| ILLINOIS STATE BOARD OF EDUCATION, and I.W., a minor, by and through her parents A.M.V.-W. and D.W., | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This case is the second challenge to a decision by an Impartial Hearing Officer of the Illinois State Board of Education in the long-running dispute between the parents of I.W. (a former student) and Lake Forest High School District 115 ("the Parents" and "the District," respectively). The gist of the case is whether the District has a duty to pay for two years of tuition for the student's enrollment at Eagle Hill School, a residential high school in Massachusetts, during the 2015-2017 school years.

Defendant I.W. moved to dismiss the complaint, arguing that it does not satisfy pleading standards. She also argues that it is an improper collateral challenge to a decision made in earlier litigation between the same parties in the same dispute. *See I.W. v. Lake Forest High Sch. Dist. No. 115 et al.*, No. 17 C 7426 (N.D. Ill. 2019) (Pallmeyer, C.J.).

Defendant I.W.'s Motion to Dismiss (Dckt. No. [16]) is granted in part and denied in (large) part.

**Factual Background**

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

I.W. was born in Russia in 1999. *See* Cplt. ¶ 13 (Dckt. No. 1). The Parents adopted her when she was three years old, and began raising her in the Chicagoland area. *Id.* Soon after her adoption, Ira Chasnoff, M.D. – a doctor at the Child Study Center of Chicago – diagnosed I.W. with Mixed-Receptive Expressive Language Disorder and Fetal Alcohol Exposure. *Id.* at ¶ 14.

Throughout her childhood, I.W. underwent more evaluations and testing. *Id.* at ¶¶ 15–18. When she was seven years old, a clinical child psychologist determined that I.W. had "relatively low cognitive ability" and was "highly distractible." *Id.* But despite these findings, the psychologist did not officially diagnose I.W. with Attention Deficit-Hyperactivity Disorder ("ADHD"). *Id.* at ¶ 16. That would come years later, in 2010, when doctors at the Evaluation Center for Learning diagnosed her with specific learning disabilities and a speech and language impairment, as well as ADHD. *Id.* at ¶ 17.

Soon after her diagnosis, I.W. began attending a therapeutic day program in the northern suburbs of Chicago called the Cove School. *Id.* at ¶ 18. She started at the Cove School in the middle of fifth grade, and attended that school until seventh grade. *Id.* She spent eighth grade at a school in the Lake Forest Elementary District (which, Plaintiff notes, is separate from Lake Forest High School). *Id.* at ¶ 19.

I.W. then enrolled at Lake Forest High School for her freshman year of high school, in the 2014-15 academic year. *Id.* at ¶ 20. She passed her classes that year. *Id.* at ¶ 21. But the Parents changed course for the 2015-16 year. They removed her from Lake Forest High School and enrolled her at Eagle Hill School, a private residential school in Hardwick, Massachusetts. *Id.* In June 2015, her Parents notified the Board of Education of Lake Forest High School of their intent to enroll her at Eagle Hill. *Id.* at ¶ 22.

At the beginning of the 2015 academic year, the District held an Individualized Education Program ("IEP") meeting about her. The District ultimately recommended that she remain at Lake Forest High School. *Id.* at ¶ 23. But the Parents disagreed and enrolled her at Eagle Hill. *Id.* She attended Eagle Hill for the 2015-16 school year.

During the summer of 2016, the District conducted an independent evaluation and funded private psychological and psychiatric evaluations of I.W. *Id.* at ¶ 24. The evaluators recommended I.W.'s placement in a therapeutic day school. *Id.* Later that summer, the District reviewed the results of the evaluation and conducted a second IEP meeting. *Id.* at ¶ 25. While the IEP recommended a therapeutic day school, the Parents once again enrolled I.W. at Eagle Hill. *Id.* But, as the District sees it, Eagle Hill does not provide the "educational and therapeutic supports" recommended by the 2016 evaluation. *Id.* at ¶ 26.

The 2016-17 school year did not go smoothly for I.W. Eagle Hill expelled her in the Fall of 2016 for a behavioral incident, apparently a fight with another student. *Id.* at ¶ 27. And unfortunately, Eagle Hill's tuition policies were not very forgiving: the school does not have a refund policy, and it similarly has a "no tolerance" rule for behavioral issues. *Id.* at ¶ 28. So, I.W.'s Parents were responsible for the full 2016-17 tuition costs, even though she no longer

attended the school. *Id.* I.W. ended up at the therapeutic day school originally recommended by the IEP evaluators, and the District paid for it for 2016-17. *Id.* at ¶ 29.

## Procedural History

The Parents filed a due process complaint with the Illinois State Board of Education on April 26, 2016. They alleged that the District had denied I.W. a "free appropriate public education" in violation of the Individuals with Disabilities and Education Act ("IDEA"), 20 U.S.C. § 1412. They sought reimbursement for the tuition and costs of attending Eagle Hill.

The first Hearing Officer (Philip Milsk) presided over an evidentiary hearing and ultimately found in favor of the District. He concluded that the District had failed to provide a free appropriate public education to I.W. as required by the statute. *See* Cplt. ¶ 34. But he also found that the Parents had failed to prove that the private school was an appropriate placement. *Id.* The Hearing Officer concluded that the Parents were not entitled to reimbursement for the tuition of the Eagle Hill School. *Id.* at ¶ 35.

The Parents challenged that decision by filing suit in the United States District Court for the Northern District of Illinois under the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(i)(2)(A). *See I.W. v. Lake Forest High Sch. Dist. No. 115 et al.*, No. 17 C 7426 (N.D. Ill. 2019). The District did not appeal the Hearing Officer's ruling that it had failed to provide free appropriate public education. So the only issue was whether sending I.W. to the Eagle Hill School was appropriate.

After recounting the procedural history and surveying the record, Judge Pallmeyer vacated the Hearing Officer's decision. *See I.W. v. Lake Forest High Sch. Dist. No. 115 et al.*, No. 17 C 7426, 2019 WL 479999 (N.D. Ill. 2019). The Court's ruling largely rested on Hearing Officer Milsk's silence about one particular form of evidence: teacher narratives. Judge

4

Pallmeyer noted that it was unclear what weight, if any, the Hearing Officer had given to the teacher narratives (meaning narratives submitted by I.W.'s teachers at the Eagle Hill School). *Id.* at *11 ("It is not clear from his order, however, that the Officer gave the report card narratives *any* weight.") (emphasis in original). The Hearing Officer's findings of fact did not mention the teacher narratives at all. *Id.* "It is unclear whether the Hearing Officer afforded them no weight or simply overlooked them." *Id.*

The uncertainty was enough to send the case back. The Court remanded the case so that the Hearing Officer could reconsider his conclusion in light of the teacher narratives. *Id.* ("The court remands the case to the Hearing Officer for reconsideration of his proprietary finding, in light of the teacher narratives included in I.W.'s Eagle Hill report card.").

The Court concluded that the Hearing Officer's "remaining factual findings are supported." *Id.* at *12. The Hearing Officer's weighing of testimony from the mother and other witnesses was not "clearly erroneous." *Id.* Still, that testimony needed reweighing in light of the evidence from the teacher narratives. *Id.* "The court encourages the Hearing Officer on remand to reweigh that evidence [other testimony from the student's mother and others] in light of the information provided in the Eagle Hill teacher narratives." *Id.*

Judge Pallmeyer also noted that the Hearing Officer "paid little attention" to other evidence about I.W.'s progress at Eagle Hill. *Id.* In the end, the Court ordered the Hearing Officer to reweigh all of the evidence, after expressly adding the teacher narratives to the scales. *Id.* (remanding the case "so that the Hearing Officer may weigh such evidence in making his propriety determination").

By the time the remanded case reached his desk, Hearing Officer Milsk had retired. *See* Cplt. ¶ 38. A new Hearing Officer thus took over the case. Hearing Officer Janet Maxwell-

5

Wickett began by consulting with the parties, getting their buy-in about the meaning of Judge Pallmeyer's Order, as well as their views on the best way to proceed. *See* Final Determination and Order on Remand dated June 7, 2019, at 2–3 (Dckt. No. 1-1).

Hearing Officer Maxwell-Wickett reviewed the entire record, including the evidence about the teacher narratives. The Hearing Officer reviewed the "complete administrative record of the due process hearing held from April – June, 2017," including the "transcript testimony of all witnesses presented and all documents introduced and admitted into evidence." *Id.* at 5 of 20. The Hearing Officer considered the briefs submitted by the parties, too. *Id.*

After "carefully review[ing]" the full record, Hearing Officer Maxwell-Wickett ruled that the Eagle Hill School was, in fact, an appropriate placement for I.W. *Id.* The Hearing Officer expressly considered the teacher narratives and gave them "substantial weight." *Id.* at 15 of 20. "Based upon the evidence introduced into the administrative record at hearing and the specific evidence Judge Pallmeyer directed to be reconsidered on remand, this Hearing Officer finds that the totality of factors support the finding that Parents' unilateral placement at Eagle Hill School was appropriate." *Id.* at 16 of 20.

Finally, the Hearing Officer found that the "balancing of the equities favors Parents." *Id.* at 17 of 20. "Overwhelmingly," the Hearing Officer added. *Id.* There was "no evidence" supporting a reduction in the requested reimbursement amount. *Id.* So the Hearing Officer ruled that the District had to pay the full tuition bill for the two years, totaling over $140,000. *Id.*

That ruling spawned this lawsuit, the second federal case involving this dispute. The parties switched roles. This time, the District challenged the Hearing Officer's decision, alleging a variety of alleged errors.

## Discussion

The Individuals with Disabilities Education Act seeks to "ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education," otherwise known as a "FAPE." 20 U.S.C. § 1415. In the words of Justice Kagan: "Welcome to – and apologies for – the acronymic world of federal legislation." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 749 (2017).

States receive federal funding under the Act in exchange for their commitment to furnish a FAPE to all children with certain physical or intellectual disabilities. *See* 20 U.S.C. § 1412(a)(1)(A); *Fry*, 137 S. Ct. at 748. The law includes procedural safeguards to ensure students can receive a FAPE. *See* 20 U.S.C. § 1415. The established procedures allow parents to participate in the process (often on behalf of their disabled child) to ensure that he or she receives an appropriate public education. *See* 20 U.S.C. §§ 1415(b), 1415(f)(1)(A).

Parents have a right to review. The IDEA grants parents the opportunity for an impartial due process hearing for matters "relating to the identification, evaluation, or educational placement of the child," among other things. *See* 20 U.S.C. §§ 1415(b)(6), 1415(f)(1)(A). A hearing officer decides if the child received a free appropriate public education from the local school. *See* 20 U.S.C. § 1415(f)(3)(E)(i).

The statute authorizes judicial review, too. Any party aggrieved by the findings "shall have the right to bring a civil action with respect to the complaint . . . in a district court of the United States, without regard to the amount in controversy." *See* 20 U.S.C. § 1415(i)(2)(A). That's exactly what the Lake Forest School District did here. The District filed this lawsuit, challenging the decision of the second Hearing Officer.

7

I.W. responded by filing a motion to dismiss. *See* Dckt. No. 16. At times, the tone of the motion is rather incredulous that the District would exercise its statutory right to challenge the Hearing Officer's decision. In fact, the Parents went so far as to file a motion for *sanctions* against the District's lawyers. *See* Dckt. No. 11. This Court already denied that motion, and for good reason. *See* Dckt. No. 49. The IDEA allows "*any* party aggrieved by the findings and decision" to bring a civil action "in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A) (emphasis added). "[A]ny party" means *any* party.

The District is merely doing what the Parents already did: challenging the Hearing Officer's decision in federal court. The Parents took full advantage of the right to judicial review in 2017, when they filed a lawsuit and appealed the Hearing Officer's decision denying reimbursement of I.W.'s Eagle Hill tuition. *See* Complaint, *I.W. v. Lake Forest High Sch. Dist. No. 115 et al.*, No. 17 C 7426 (N.D. Ill. 2017), Dckt. No. 1. As the Parents acknowledged when they filed their own lawsuit, "A party aggrieved by the findings and decision of the impartial process hearing has the right to bring a civil action in federal court. 20 U.S.C. § 1415(i)(2)(A)." *Id.* at ¶ 139. What's good for the goose is good for the gander.

The Parents argue that the complaint fails to satisfy the pleading standards explained in *Twombly* and *Iqbal*. *See* Dckt. No. 16, at 4, 6-7. But there is little concern about notice pleading here. The parties have a long-running dispute that has already produced two decisions by two Hearing Officers, plus two lawsuits before two federal judges. The Parents have ample notice of what this dispute is about, and then some.

The complaint might not include details of all of the alleged errors in the Hearing Officer's decision. But Rule 8 requires notice of a claim, not pleading with particularity. *Cf.* Fed. R. Civ. P. 9.

And even then, the complaint does narrow the field. The District challenges alleged factual errors in the Hearing Officer's decision such as "Student's progress, Eagle Hill's available academic and therapeutic supports, the recommendations of outside evaluators, and the placement offered by the District." *See* Cplt. ¶ 44(a). The District also flags potential legal errors such as the "appropriateness of Eagle Hill, her determination of the District's financial responsibility for Student's private placement, and the balancing of equities in this matter." *Id.* at ¶ 44(b). Those allegations provide adequate notice of the nature of the dispute. If the Parents want or need more particularity, they can serve an interrogatory.

The Parents' own complaint in the earlier litigation provides a useful point of comparison. *See* Complaint, *I.W. v. Lake Forest High Sch. Dist. No. 115 et al.*, No. 17 C 7426 (N.D. Ill. 2017), Dckt. No. 1. Paragraph 12 of that 2017 complaint identified the alleged errors, claiming that the Hearing Officer failed to consider nine specific pieces of evidence. The Parents thought that was good enough to state a claim then, and they were right. In the grand scheme of things, the complaint at issue now – brought by the District – is not that much different.

The District's complaint states a claim upon which relief can be granted, too. *See* Fed. R. Civ. P. 12(b)(6). The District challenges a decision by the Hearing Officer, just like the Parents did – when the tables were turned – after the decision by the first Hearing Officer. Then, the Parents argued that the Hearing Officer made mistakes, and they were ultimately successful. Now, the shoe is on the other foot, and the District is the one challenging the decision of the Hearing Officer.

That said, a few portions of the complaint do seem problematic. Paragraph 43 alleges that "Hearing Officer Maxwell-Wickett's decision should be reversed because it was based on

the unsupported conclusion that Hearing Officer Milsk did not consider evidence because the evidence was not explicitly addressed in Hearing Officer Milsk's decision." *See* Cplt. ¶ 43.

Whose "unsupported conclusion"? Judge Pallmeyer's? If so, that ship has sailed. Judge Pallmeyer already vacated the first Hearing Officer's decision and remanded for another try. That case is over. And that decision is not subject to review by *this* Court a second time around. To the extent that Plaintiff seeks to challenge Judge Pallmeyer's ruling here, the motion to dismiss is granted.

What Hearing Officer Milsk did or did not consider was the issue in the *last* lawsuit. Judge Pallmeyer ruled that it was "unclear" whether Hearing Officer Milsk considered certain evidence. *See I.W. v. Lake Forest High Sch. Dist. No. 115 et al.*, No. 17 C 7426, 2019 WL 479999, at *11 (N.D. Ill. 2019). So the Court vacated that decision, and after remand Hearing Officer Maxwell-Wickett reweighed the evidence. If the District disagreed with Judge Pallmeyer's decision about the clarity of the record, they should have appealed to the Seventh Circuit then and there.

The issue in *this* lawsuit is not whether the first Hearing Officer (Milsk) did or did not consider certain evidence. The only issue now is whether the decision by the second Hearing Officer (Maxwell-Wickett) stands up to scrutiny. It makes no difference at this point whether the first Hearing Officer considered the teacher narratives and comparable evidence. The second Hearing Officer considered the issue afresh, reweighed the evidence, and made a decision based on the full record.

In its response brief, the District disclaims any challenge to Judge Pallmeyer's order. Instead, the District argues that it is challenging "*IHO Maxwell-Wickett's* unsupported conclusion that IHO Milsk overlooked the narratives rather than determined they were not due

any weight." *See* Dckt. No. 46, at 7 (emphasis added). But the District provides no citation to Hearing Officer Maxwell-Wickett's opinion. It is unclear where the District picked up the notion that the second Hearing Officer thought that the first Hearing Officer missed something. It was Judge Pallmeyer – not Hearing Officer Maxwell-Wickett – who "found that IHO Milsk overlooked the report card narratives." *Id.* at 8.

Paragraph 45 of the complaint advances another problematic challenge. The District alleges that this Court should reverse the decision of the second Hearing Officer, and reinstate the decision of the first Hearing Officer, because only the first Officer heard live testimony. "Hearing Officer Milsk heard the evidence and determined the creditability [sic] of witnesses." *See* Cplt. at ¶ 45(a). But "Hearing Officer Maxwell-Wickett did not hear any evidence, so her creditability [sic] determinations and weighing of the evidence should be given no weight." *Id.* at ¶ 45(b).

That ship has sailed too. Judge Pallmeyer vacated the decision and ordered the Hearing Officer to reweigh the evidence. *See I.W.*, 2019 WL 479999, at *12. A challenge to the reweighing of the evidence is a challenge to Judge Pallmeyer's decision to vacate the original decision and remand for a second try. Judge Pallmeyer's case closed without an appeal.

In the meantime, the first Hearing Officer retired before reweighing the evidence. It is true that the second Hearing Officer did not hear the witnesses in person, so she could not see their demeanor (as she herself acknowledged). *See* Dckt. No. 1-1, at 4 n.2 of 20. But hearing testimony in person is not a *sine qua non* for weighing evidence. And as a practical matter, it is much ado about nothing. This case is not a "whodunit" where the outcome could turn on a witness's small twitches, odd looks, body language, or evasive facial expressions.

11

This case doesn't require the factfinder to decide which witness is lying. It's a case about the proper education of a student. And Hearing Officers are well qualified to make determinations about educational policy. *See Beth B. v. Van Clay,* 282 F.3d 493, 496 (7th Cir. 2002) ("Because school authorities are better suited than are federal judges to determine educational policy, the district court is required, in its independent evaluation of the evidence, to give due deference to the results of the administrative proceedings."); *see also B.G. by J.A.G. v. Bd. of Educ. of the City of Chicago*, 901 F.3d 903, 917 (7th Cir. 2018) ("This case involves a voluminous administrative record dealing with subject matter beyond the expertise of federal judges. That is why we defer to the hearing officer's factual findings and decline to substitute our own views on educational policy for the hearing officer's.")

Plus, a court can evaluate the credibility of a witness, even without assessing that person's demeanor. "Credibility involves more than demeanor. . . . Most important is the witness's testimony, which 'is not a discrete, self-contained unit of evidence examined and weighed without context; it is a part of the body of evidence which is intertwined and considered in its totality.'" *See Mullins v. Hallmark Data Sys., LLC*, 511 F. Supp. 2d 928, 930 (N.D. Ill. 2007) (quoting *Ayi v. Gonzalez*, 460 F.3d 876, 881 (7th Cir. 2006)). For example, a court could conclude that one witness is more credible than another because she had more contact with the student, or had more expertise, or offered more concrete facts than another witness. Alternatively, a court could decide that a person's testimony is not credible because it is against the weight of the evidence as a whole. Demeanor counts for something, but it doesn't count for everything.

The second Hearing Officer was fully capable of reweighing the evidence, even without hearing the witnesses in person. Under the District's theory, the findings of the first Hearing

12

Officer would either be set in stone, or the second Hearing Officer would need to start from scratch. And the District knew, right off the bat, that the first Hearing Officer had retired. Did the District object to the second Hearing Officer reweighing the evidence, before the scales tipped against them? Did the District ask the second Hearing Officer to start over, and hear all the witnesses again?

That said, the District is free to make any arguments about the credibility of witnesses – and the relative ability of the two Hearing Officers to assess it – at the summary judgment stage. This Court will keep an open mind, and is not foreclosing any such argument. Even so, before devoting too much real estate to that issue in the briefs, the District should consider whether the in-person demeanor of the witnesses makes much of a difference in a case like this.

Overall, the parties have a disagreement about whether the Hearing Officer made the right decision. This case is a review of a decision by an administrative agency. A motion to dismiss is a poor vehicle for resolving this dispute. The outcome depends on the facts, so a motion for summary judgment is a better way to proceed.

## Conclusion

Defendant I.W.'s Motion to Dismiss (Dckt. No. [16]) is granted in part and denied in part.

Date: March 26, 2020

Steven C. Seeger
United States District Judge